## Case No. 7,022.

INDIANA v. MILLER et al.

[3 McLean, 151.] [1]

Circuit Court, D. Indiana. May Term, 1843.

Mr. Stevens, for plaintiff.
Mr. Lane, for defendants.

OPINION OF THE COURT. This action is brought by the state of Indiana, to recover possession of a certain tract of land, which is claimed under certain acts of con-

[1] [Reported by Hon. John McLean, Circuit Justice.]

gress. The action having been brought in the state court, has, by consent, been transferred to this court. The defendants hold the land under a patent, dated in 1831. They claimed the land under a pre-emption right, by virtue of the act of the 29th May, 1830 [4 Stat. 420]. The facts of the case being agreed, the questions of law are submitted to the court. As the legal title is vested in the defendants, the plaintiff can only recover by showing that it holds a prior grant, or that the patent has been fraudulently obtained by defendants, or that it has been issued without the authority of law. The plaintiff contends that the tract in controversy contained a salt spring, and was conveyed to the state as such, long before the patent was issued to the defendants.

In the 2d section of the act of the 18th May, 1796 [1 Stat. 465], it is provided, that "every surveyor shall note in his field book, the true situations of all mines, salt licks, salt springs, and mill seats, which shall come to his knowledge; all water courses over the line he runs shall pass, and also the quality of the lands." This field book was required to be copied and transmitted to the officers, who may superintend the sales of the land. By the 6th section of the act of the 26th of March, 1804 [2 Stat. 279], it is declared that, "the several salt springs in the said territory, together with as many contiguous sections to each as shall be deemed necessary by the president of the United States, shall be reserved for the future disposal of the United States: and any grant which may hereafter be made for a tract of land, containing a salt spring, which had been discovered previous to the purchase of such tract from the United States, shall be considered as fraudulent and null." By the act of the 29th February, 1808 [Id. 470], lands heretofore reserved were authorised to be sold, except section numbered sixteen, and the salt springs, and the lands reserved for the use of the same. Congress, by reserving salt springs, could only have intended to include those that were valuable, for the purpose of making salt. This is evident from the reservation of as many contiguous sections as the president should deem necessary. It seems that on the north-east quarter of section 25, the tract in controversy, the surveyor indorsed, "there is an extraordinary salt spring, said to be superior to any other in the territory." Symmes, the register, swears that this land was always reserved. Findlay states that it was reserved; that it was marked on the plat, "U. S." The act of 24th February, 1815 [6 Stat. 150], authorises "Perine to enter at private sale the north-east quarter of the above section; if, on inquiry, the register and receiver shall be satisfied that it does not contain any salt spring or springs, valuable for the purpose of making salt."

By the act of the 19th of April, 1816 [3 Stat. 290], in the 6th section, it is provided, "that all salt springs within the said territory of Indiana, and the lands reserved for the use of the same, together with such other lands as may, by the president of the United States, be deemed necessary and proper for working the said salt springs, not exceeding in the whole, the quantity contained in thirty-six entire sections, shall be granted to the said state of Indiana for the use of the people of the said state, the same to be used under such terms, conditions and regulations, as the legislature of the said state shall direct: provided, the said legislature shall never sell nor lease the same for a longer period than ten years at any one time." Under this legislative grant, the state claims the lands in controversy. But as this grant conveys, by a general description, the state must show that the land claimed by it, comes within the description. It appears that the salt lick or spring in question, was found of no value for the manufacture of salt. After some few attempts to make salt, it was found that the water was not of sufficient strength to make it of any value for this purpose. It was resorted to by animals, which drank the water, and this created an impression that it was a valuable salt spring. A distinction is made between a "salt lick" and a "salt spring," by defendants' counsel, and it is insisted that the terms convey different meanings. That a lick is formed where salt water appears on the surface of the ground; but that a spring is a fountain of water. These terms seem to be used in the acts of congress, as synonymous. A "salt lick" is so called, in the Western country, from the fact that deer and other wild animals resort to it, and lick or drink the brackish water. And in this respect no distinction is perceived between a "lick," as frequently used, and a "salt spring."

Although this salt lick or spring was noted by the surveyor, yet it was not entered as a reserve on the books of the general land office, or on the books of the register's office in Cincinnati. And it appears, that in 1826, the commissioner of the general land office instructed the register of the land office at Cincinnati, that the existing law authorised him to sell the land in question at the next public sale. And by the act of the 12th of February, 1831 [4 Stat. 441], the president of the United States was authorised to offer, at public sale, the three remaining quarters of section twenty-five, the other quarter section having been entered by Perine, under the act of 1815, as above stated. On the 10th of August, 1836, E. A. Brown, commissioner of the general land office, certified a list of the lands selected under the sixth section of the act of the 19th of April, 1816, which, by that act, were granted to the state, as having been reserved from sale on account of salt springs. This list includes

the quantity of thirty-six sections, which was the limitation of the grant, and among them the tract in controversy was not included. Under a general law of the state of Indiana, in relation to lands on which salt springs were situated, a lease for the premises in question was executed. But the lessee never entered into the possession. On the 3d of February, 1832, a joint resolution of the legislature of Indiana was passed, in which facts, in relation to the land in controversy, were stated through misapprehension, and the governor was requested to correspond on the subject with the commissioner of the general land office. The application of the legislature was rejected by congress. But on the 3d of July, 1832 [4 Stat. 558], congress authorised the state to sell the lands granted to it by the act of 1816. This was done in pursuance of a memorial of the Indiana legislature, dated the 23d of January, 1829, in which they represented that a township had been reserved for making salt, which had been conveyed to the state by the act of 1816, and that all attempts to make salt had proved abortive, and they prayed for an act to authorise the state to sell the lands, etc.

From the foregoing facts and acts of congress, it clearly appears that the land in controversy never vested in the state. It was not entered as a reserve on the records at Washington, or at Cincinnati. The state received, under the act of 1816, thirty-six entire sections, which were all it was entitled to under that act; and the land now claimed was not included in the above. The commissioner of the general land office certified that the state had received all the lands within it, which had been reserved for salt springs. All of which land, it appears. under the act of congress, the state has sold. We are, therefore, clearly of opinion, that the sale of the land to the patentee was authorised by law, and, consequently, that the patent is valid. No ground is perceived. on which the claim of the state can be sustained. Judgment for the defendants.